**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 14-_________-CIV-_________**

------------------------------------------------------------------x

**HAWAIIAN AIRLINES, INC.** :

**Plaintiff,** :

**- against -** :

**AAR AIRCRAFT SERVICES, INC., f/k/a AAR AIRCRAFT SERVICES - MIAMI, INC., and MANKIEWICZ COATINGS, LLC** :

:

**Defendants.** :

------------------------------------------------------------------x

## COMPLAINT

Plaintiff HAWAIIAN AIRLINES, INC. (hereinafter "HAL") by and through its attorneys, Condon & Forsyth LLP, for their complaint against Defendants, AAR AIRCRAFT SERVICES, INC., f/k/a AAR AIRCRAFT SERVICES – MIAMI, INC. (hereinafter "AAR") and MANKIEWICZ COATINGS, LLC (hereinafter "MANKIEWICZ"), respectfully alleges as follows:

## PARTIES

1. Plaintiff HAL was and still is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Honolulu, Hawaii. HAL is a commercial airline operating under Title 14 of the Code of Federal Regulations Part 121 and provides scheduled air services between Florida and Hawaii.

2. Defendant AAR AIRCRAFT SERVICES, INC. is a corporation organized and existing under the laws of Illinois with its principal place of business in Wood Dale, Illinois.

AAR AIRCRAFT SERVICES – MIAMI, INC. was a corporation organized and existing under the laws of Florida and maintained its principal place of business in Miami, Florida. On or about January 1, 2010 AAR AIRCRAFT SERVICES – MIAMI, INC. merged with AAR AIRCRAFT SERVICES, INC.

3. Upon information and belief, and at all times hereinafter mentioned, Defendant MANKIEWICZ was and still is a corporation organized and existing under the laws of South Carolina and maintains its principal place of business in Charleston, South Carolina.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has *in personam* jurisdiction over Defendant AAR because Defendant AAR maintains one or more offices for the transaction of business within the Southern District of Florida.

6. This Court has *in personam* jurisdiction over Defendant MANKIEWICZ because MANKIEWICZ conducts business in the state of Florida and pursuant to Florida long-arm statute § 48.193 because Defendant MANKIEWICZ entered into a contract to be performed in Florida and then failed to perform the acts required by the contract in Florida.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims asserted herein took place within the Southern District of Florida, as well as, pursuant to 28 U.S.C. § 1391(b)(3) because Defendant AAR resides in the Southern District of Florida.

## GOVERNING LAW

8. The governing law is Florida law for all causes of action except those related to AAR which are governed by New York law.

## FACTUAL ALLEGATIONS AGAINST AAR

9. On or about November 17, 2009, HAL and AAR entered into an Agreement which sets forth certain terms and conditions that apply to AAR's maintaining, servicing, inspecting and painting of HAL's fleet of Boeing B717 aircraft.

10. The Agreement specifies that AAR was, among other things, to perform a fleet-wide paint initiative which consisted of painting the exterior portion of the wings of eleven (11) of HAL's B717 aircraft.

11. AAR's services to be performed were set forth in the work scope specified as Exhibit A to the Agreement, including without limitation, Standard Work Scope and Additional Work ("Services").

12. Pursuant to article 2.3 of the Agreement, entitled "Maintenance Specifications," AAR agreed that all Services performed by AAR under the Agreement, including without limitation, Services performed by Approved Subcontractors under article 2.2, would be in accordance with applicable Federal Aviation Regulation(s) ("FAR") and HAL's Federal Aviation Administration ("FAA") approved maintenance program, including applicable manuals and work package.

13. Applicable FAR 14 C.F.R. § 43.13 required AAR to meet the following three criteria:

a. Apply the paint using the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or

Instructions for Continued Airworthiness prepared by its manufacturer, or other methods, techniques, and practices acceptable to the Administrator;

b. Use the tools, equipment, and test apparatus necessary to assure completion of the work in accordance with accepted industry practices; and

c. Complete the work in such a manner and use materials of such a quality, that the condition of the aircraft will be at least equal to its original or properly altered condition.

14. HAL's FAA approved maintenance program, including applicable manuals and work package, required AAR to comply with Boeing Service Bulletin(s) with regard to application of the enhanced sealant and use of primer, and to comply with paint manufacturer's instructions with regard to thickness levels of the primer and topcoat.

15. AAR painted HAL's B717s at AAR's facilities in Miami, Florida. The painting was done on a rolling basis with HAL's first aircraft being painted in 2010 and HAL's last aircraft being painted in 2011.

16. AAR performed the aforementioned Services and signed-off on all required paperwork as having complied with FARs and HAL's FAA approved maintenance program. AAR then returned the aircraft to HAL.

17. During subsequent routine maintenance inspections, HAL discovered that accelerated corrosion was pervasive on the exteriors of the wings of those B717 aircraft painted by AAR. HAL first discovered corrosion in February 2011.

18. AAR's breach of its contractual obligation to apply the paint in accordance with FARs and HAL's FAA approved maintenance program resulted in accelerated corrosion on the wings of HAL's B717 aircraft.

19. AAR breached its contractual obligation to apply the paint in accordance with FAR 14 C.F.R. § 43.13(a), as specified in Paragraph 13 above, because AAR failed to perform the Services using the methods, techniques, and practices prescribed in the manufacturer's maintenance manual, the Instructions for Continued Airworthiness prepared by the manufacturer, or other methods, techniques, and practices acceptable to the Administrator. Specifically, AAR failed to apply the enhanced sealant in accordance with Boeing Service Bulletin(s), used an incorrect type of primer, and failed to apply the appropriate level of thicknesses for both topcoat and primer pursuant to manufacturer's recommendations.

20. AAR breached its contractual obligation to apply the paint in accordance with FAR 14 C.F.R. § 43.13(c), as specified in Paragraph 13 above, because AAR failed to complete the Services in such a manner and use materials of such a quality, that the condition of the aircraft would be at least equal to its original or properly altered condition. AAR's failures have resulted in premature failure of the wing paint to adequately protect the skin as evidenced by significant corrosion findings less than two (2) years after the paint was applied. This accelerated corrosion has left the aircraft worse-off than the original or unaltered condition.

21. AAR breached its contractual obligation to apply the paint in accordance with HAL's FAA approved maintenance program, as specified in Paragraph 14 above, because AAR failed to comply with the requirements of Boeing Service Bulletin(s), in that AAR failed to properly apply the enhanced sealant and used an incorrect type of primer, and because AAR

failed to apply the appropriate level of thicknesses for both topcoat and primer pursuant to manufacturer's recommendations.

22. As a result of these failures by AAR, the aircraft in question suffered significant corrosion and HAL must now repair all the aircraft painted by AAR, leading to a disruption in service and added costs and expenses. Boeing has noted that current maintenance actions will be inadequate to arrest the corrosion trend and HAL should strip and repaint the aircraft.

**<u>FACTUAL ALLEGATIONS AGAINST MANKIEWICZ</u>**

23. HAL and MANKIEWICZ entered into a contract on or about November 17, 2009, which set forth certain terms and conditions that apply to MANKIEWICZ supplying the paint to be used by AAR in performing its Services pursuant to the Agreement.

24. MANKIEWICZ represented to HAL, and assured HAL, that the paint and primer products to be supplied by MANKIEWICZ were in compliance with FAA requirements, manufacturer-approved, and able to meet HAL's specific operational needs.

25. HAL relied on these representations and assurances in entering into a contract with MANKIEWICZ and selecting MANKIEWICZ paint and primer products for use by AAR in performance of its Services pursuant to the Agreement.

26. Upon information and belief, MANKIEWICZ shipped the paint and primer products to AAR's facilities in Miami, Florida, whereby AAR then painted HAL's B717s. The painting was done on a rolling basis with HAL's first aircraft being painted in 2010 and HAL's last aircraft being painted in 2011.

27. Shortly after AAR had begun its Services, HAL expressed concern to MANKIEWICZ regarding the paint and questioned its ability to meet with FAA requirements, manufacturer approval, and HAL's specific operational needs. In a response e-mail dated July

19, 2010, MANKIEWICZ assured HAL that they are required to meet Boeing and Airbus specifications and that HAL cleans its planes often enough that the environmental conditions would not be a problem.

28. HAL relied on MANKIEWICZ'S representations and assurances in its continued use of MANKIEWICZ'S paint and primer products. Furthermore, MANKIEWICZ'S misrepresentations caused HAL not to terminate the contract early.

29. During subsequent routine maintenance inspections HAL discovered that accelerated corrosion was pervasive on the exteriors of the wings of those B717 aircraft painted by AAR using MANKIEWICZ paint and primer products. HAL first discovered corrosion on or about February 2011.

30. MANKIEWICZ's breach of its contractual obligation to supply paint that is in compliance with FAA requirements, manufacturer-approved, and able to meet HAL's specific operational needs, resulted in accelerated corrosion on the wings of HAL's B717 aircraft.

31. As a result of these failures by MANKIEWICZ, the aircraft in question suffered significant corrosion and HAL must now repair all the aircraft painted with MANKIEWICZ paint and primer products, leading to a disruption in service and added costs and expenses. Boeing has noted that current maintenance actions will be inadequate to arrest the corrosion trend and HAL should strip and repaint the aircraft.

**FIRST CLAIM FOR RELIEF AGAINST AAR –**
**BREACH OF CONTRACT**

32. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

33. Defendant AAR has materially breached the Agreement by failing to comply with the relevant FARs and HAL's FAA approved maintenance program as specified in Article 2.3 of the Agreement, entitled "Maintenance Specifications."

34. AAR failed to comply with FAR 14 C.F.R. § 43.13 because AAR failed to perform the Services using the methods, techniques, and practices prescribed in the manufacturer's maintenance manual, the Instructions for Continued Airworthiness prepared by the manufacturer, or other methods, techniques, and practices acceptable to the Administrator. Specifically, AAR failed to apply the enhanced sealant in accordance with Boeing Service Bulletin(s), used an incorrect type of primer, and failed to apply the appropriate level of thicknesses for both topcoat and primer pursuant to manufacturer's recommendations. AAR did not seal the entire Butt Joint Area resulting in footprint housing contamination, sealant cracks, sealant outgassing, and ultimately, exposure to the corrosive environment. AAR used an improper primer, as well as an inconsistent primer and topcoat, which resulted in the formation of corrosion on the wings. AAR's Services left the wings with thickness levels that are below paint manufacturer recommendations and are insufficient to prevent corrosion.

35. AAR failed to comply with FAR 14 C.F.R. § 43.13(c) because AAR failed to complete its Services in such a manner and use materials of such a quality, that the condition of the aircraft will be at least equal to its original or properly altered condition. AAR's failures have resulted in premature failure of the wing paint to adequately protect the skin as evidenced by significant corrosion findings less than two (2) years after the paint was applied. This accelerated corrosion has left the aircraft worse-off than the original or unaltered condition

36. AAR failed to comply with HAL's FAA approved maintenance program because AAR failed to comply with the requirements of Boeing Service Bulletin(s), in that AAR failed to

properly apply the enhanced sealant and used an incorrect type of primer, and because AAR failed to apply the appropriate level of thicknesses for both topcoat and primer pursuant to manufacturer's recommendations. AAR did not seal the entire Butt Joint Area resulting in footprint housing contamination, sealant cracks, sealant outgassing, and ultimately, exposure to the corrosive environment. AAR used an improper primer, as well as an inconsistent primer and topcoat, which resulted in the formation of corrosion on the wings. AAR's Services left the wings with thickness levels that are below paint manufacturer recommendations and are insufficient to prevent corrosion.

37. As a result of AAR's breach, HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft. Boeing noted that current maintenance actions will be inadequate to arrest the corrosion trend, and HAL needs to strip and repaint the entire wings.

**SECOND CLAIM FOR RELIEF AGAINST AAR –**
**DUTY OF GOOD FAITH AND FAIR DEALING**

38. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

39. New York Law, which governs the Agreement, imposes into every contract an implied duty of good faith and fair dealing.

40. By, *inter alia*, purporting to comply with FAR and HAL's FAA approved maintenance program, AAR has violated its duty of good faith and fair dealing. AAR performed the Services and signed-off on all required paperwork as having complied with FAR and HAL's FAA approved maintenance program. AAR then returned the aircraft to HAL and HAL resumed operation of the aircraft, exposing the airframe, including the exterior of the wings, to corrosive environments. HAL subsequently discovered during routine maintenance inspections that the

paint work had not been properly applied and completed and accelerated corrosion was pervasive.

41. As a result of AAR's failure to act in good faith and deal fairly with HAL, HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft. Boeing noted that current maintenance actions will be inadequate to arrest the corrosion trend, and HAL needs to strip and repaint the entire wings.

**THIRD CLAIM FOR RELIEF AGAINST AAR – MISREPRESENTATION**

42. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

43. HAL relied on AAR's assurances that AAR had the knowledge and experience to properly paint the exterior wings of HAL's aircraft and that AAR would in fact paint the exterior wings properly and in accordance with all relevant FARs and HAL's FAA approved maintenance program.

44. These material misrepresentations induced HAL to enter into the Agreement with AAR. Furthermore, AAR's misrepresentations caused HAL not to terminate the Agreement early.

45. As a result of AAR's misrepresentation, HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft.

**FOURTH CLAIM FOR RELIEF AGAINST AAR – UNJUST ENRICHMENT**

46. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

47. By not taking the proper time and necessary precautions to ensure that the aircraft were painted according to FARs and HAL’s FAA approved maintenance program, AAR reduced its costs and minimized the amount of work flow capacity allotted to HAL, thus allowing AAR to service other air carriers and increase its profits.

48. As a result, AAR has been unjustly enriched at the expense of HAL.

**FIRST CLAIM FOR RELIEF AGAINST MANKIEWICZ – BREACH OF CONTRACT**

49. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

50. Upon information and belief, Defendant MANKIEWICZ has materially breached the contract by supplying paint that does not comply with FAA requirements, is not manufacturer-approved, and is not appropriate for HAL's specific operational needs.

51. As a result of MANKIEWICZ's breach, the aircraft in question suffered significant corrosion and HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft. Boeing noted that current maintenance actions will be inadequate to arrest the corrosion trend, and HAL needs to strip and repaint the entire wings.

**SECOND CLAIM FOR RELIEF AGAINST MANKIEWICZ – DUTY OF GOOD FAITH AND FAIR DEALING**

52. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

53. Florida Law, which governs the contract, imposes into every contract an implied duty of good faith and fair dealing.

54. By, *inter alia*, representing to HAL, and assuring HAL, that the paint and primer products to be supplied were in compliance with FAA requirements, manufacturer-approved, and

able to meet HAL’s specific operational needs, MANKIEWICZ has violated its duty of good faith and fair dealing. As a result of these representations and assurances, HAL entered into the contract with MANKIEWICZ and selected their paint and primer products for use by AAR in performance of its Services pursuant to the Agreement. AAR performed its Services and then returned the aircraft to HAL. HAL resumed operation of the aircraft, exposing the airframe, including the exterior of the wings, to corrosive environments. HAL subsequently discovered during routine maintenance inspections that the paint was not able to meet HAL's specific operational needs and accelerated corrosion was pervasive.

55. As a result of MANKIEWICZ's failure to act in good faith and deal fairly with HAL, HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft. Boeing noted that current maintenance actions will be inadequate to arrest the corrosion trend, and HAL needs to strip and repaint the entire wings.

## THIRD CLAIM FOR RELIEF AGAINST MANKIEWICZ – MISREPRESENTATION

56. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

57. HAL relied on MANKIEWICZ’s representations and assurances that the paint and primer products were in compliance with FAA requirements, manufacturer-approved, and able to meet HAL's specific operational needs.

58. These material misrepresentations induced HAL to enter into the contract with MANKIEWICZ. Furthermore, MANKIEWICZ’s misrepresentations caused HAL not to terminate the contract early.

59. As a result of MANKIEWICZ’s misrepresentation, HAL has incurred costs and damages associated with the repair and loss of use of the affected aircraft.

## FOURTH CLAIM FOR RELIEF AGAINST MANKIEWICZ – UNJUST ENRICHMENT

60. HAL repeats, reiterates, and realleges each and every allegation in paragraphs 1 through 31 above with the same force and effect as if set forth herein in full.

61. By falsely representing and assuring MANKIEWICZ that the paint and primer products were in compliance with FAA requirements, manufacturer-approved, and able to meet HAL's specific operational needs, HAL entered into a contract with MANKIEWICZ whereby MANKIEWICZ would supply paint and primer products for use by AAR in performance of its Services pursuant to the Agreement, ultimately resulting in a profit for MANKIEWICZ, to the detriment of HAL.

62. As a result, MANKIEWICZ has been unjustly enriched at the expense of HAL.

## JURY TRIAL DEMANDED

HAL demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, HAL demands judgment:

A. That AAR and MANKIEWICZ pay HAL lost revenue that HAL has incurred due to its aircraft having to be out of service for repainting;

B. That AAR and MANKIEWICZ pay HAL for supplier and vendor costs incurred by HAL as a result of having the aircraft repainted;

C. That AAR and MANKIEWICZ pay HAL any other consequential costs, including but not limited to costs associated with lost opportunities, non-operational costs associated with the repainting the aircraft such as lost marketing and advertising costs or increased future marketing and advertising costs to overcome negative publicity surrounding B717

corrosion issues, loss of competitive advantage, lost business opportunities, and lost revenue due to passengers not traveling on HAL because of the negative publicity to HAL due to the corrosion issues;

D. That AAR and MANKIEWICZ reimburse HAL for the costs of procuring interim lift for operating its aircraft fleet;

E. That AAR and MANKIEWICZ pay HAL compensatory damages in an amount to be determined at trial;

F. For costs and attorneys fees of this suit;

G. For relief in the amount of USD $10,000,000; and

H. For all other relief to which HAL may be entitled and which this Court deems just and proper.

Dated: February 14, 2014

Respectfully Submitted,

/s/ Robert C. Owens
By______________________________

Robert C. Owens
Fla. Bar No. 273988
bobowens@avlaw.com
ROBERT C. OWENS, P.A.
18890 SW 264th Street
Miami (Homestead), Florida 33031
Telephone: 305-245-6813
Facsimile: 305-245-6403

Attorney for Plaintiff
HAWAIIAN AIRLINES LIMITED

Co-counsel:
Christopher R. Christensen, Esq.
(application for admission pro hac vice soon to be filed)
Email: cchristensen@condonlaw.com
Anthony U. Battista, Esq.
(application for admission pro hac vice soon to be filed)
Email: abattista@condonlaw.com

Condon & Forsyth LLP
7 Times Square
New York, New York 10036
Telephone: 212-490-9100
Facsimile: 212-370-4453