**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:14-cv-20560-KMM

HAWAIIAN AIRLINES, INC.,

    Plaintiff,

v.

AAR AIRCRAFT SERVICES, INC.,
f/k/a AAR AIRCRAFT SERVICES - MIAMI,
INC., and MANKIEWICZ
COATINGS, LLC

    Defendants.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SPOLIATION OF EVIDENCE AND SANCTIONS AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

THIS CAUSE is before the Court on Defendant Mankiewicz Coatings, LLC's Motion for Spoliation of Evidence and Sanctions (ECF No. 106). Plaintiff Hawaiian Airlines, Inc. filed a Response in Opposition and Cross Motion for Sanctions (ECF No. 124). Defendant Mankiewicz Coatings, LLC filed a Reply (ECF No. 143). The matter is now ripe for review. For the reasons explained below, Defendant Mankiewicz Coatings, LLC's Motion for Spoliation of Evidence and Sanctions is DENIED and Plaintiff Hawaiian Airlines, Inc.'s Cross Motion for Sanctions is DENIED.

**I.    BACKGROUND**

This case concerns the cause of extensive corrosion on the fuselage of eleven of Plaintiff Hawaiian Airlines, Inc.'s ("HAL") B717 aircraft ("Subject Aircraft"). Defendant Mankiewicz Coatings, LLC's ("Mankiewicz") paint system was used to paint the Subject Aircraft from 2010 to 2011. Compl. ¶ 26 (ECF No. 1). Thereafter, corrosion developed on the Subject Aircraft, and in April 2013, the Boeing Corporation ("Boeing") determined Mankiewicz Coatings, LLC's

paint system did not meet B717 standards, which Boeing concluded caused the corrosion. *Id.* ¶¶ 27, 29. Boeing, in a report to HAL, also recommended that HAL strip and repaint the Subject Aircraft, as HAL's normal business maintenance was "inadequate to arrest the corrosion trend." *Id.* ¶ 31.

Within days of receiving Boeing's report, HAL forwarded the report to Mankiewicz. *See* Pl.'s Resp., Ex. J (ECF No. 126). Mankiewicz's representatives traveled to Honolulu that same month to inspect the Subject Aircraft. Pl.'s Resp., Exs. J, K, L (ECF No. 126). Mankiewicz drafted its own report, stating:

> Based on Boeing's statements that [HAL] cannot continue to blend the corrosion areas, as ultimately this will affect the skins, which would then need to be replaced at huge expense, not to mention lost revenue, [HAL] feels that the only choice is to strip and repaint the planes . . . . This needs to be done as soon as possible, but realistically they cannot put the planes in for paint until September . . . [HAL] wants a response from Defendant no later than May 15th [2013], as to what we feel is the cause.

Pl.'s Resp., Ex. O (ECF No. 127). In May 2013, Mankiewicz advised HAL that its lab was unable to determine the cause of the corrosion. Pl.'s Resp., Ex. M (ECF No. 126). Mankiewicz representatives returned to Honolulu in June 2013 to further evaluate the corrosion. *Id.*

In August 2013, HAL sent a demand letter to Mankiewicz. Pl.'s Resp., Ex. R (ECF 127). In it, HAL advised Mankiewicz of the estimated costs and damages associated with the corrosion, and of HAL's "expectation that [Mankiewicz would] make [HAL] whole for these costs and damages." *Id.* The demand letter also reminded Mankiewicz that Boeing recommended the strip and repaint work. *Id.* In a September 2013 email to HAL, Mankiewicz confirmed receipt of the demand letter, and stated that it was referring the matter to its legal team. Pl.'s Resp., Ex. S (ECF No. 127).

HAL began the repair and repainting process of the Subject Aircraft. From September 2013 through January 2014, HAL repainted five of the eleven Subject Aircraft. Pl.'s Resp., at 5;

2

Def.'s Mot., Ex. B (ECF No. 106). In January 2014, Mankiewicz rejected HAL's demand letter, stating, in a letter to HAL, "[w]e regret to hear about your findings and repairs that became necessary; however, after serious consideration, we have concluded that Mankiewicz shall not be held liable for this particular circumstance." Pl.'s Resp., Ex. KK (ECF No. 130). Thereafter, in February 2014, HAL commenced this action. Compl. (ECF No. 1). In December 2014 and May 2015, HAL repainted two more of the eleven Subject Aircraft. Pl.'s Resp., Ex. LL (ECF No. 130).

On June 3, 2015, Mankiewicz filed the instant motion alleging that HAL spoliated evidence and thus Mankiewicz is entitled to sanctions (ECF No. 106). HAL cross-moved for sanctions, claiming that it is entitled to attorneys' fees and costs associated with opposing both the instant motion and Mankiewicz's Motion for Relief from Order Finding Good Cause to Extend the Discovery Deadline and Continue the Trial, filed in April 2015 (ECF No. 124).

## II.   DISCUSSION

### A.  Mankiewicz's Motion for Spoliation Sanctions

Spoliation is "defined as the 'destruction' of evidence or the 'significant and meaningful alteration of a document or instrument.'" *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (citations omitted). In a diversity suit, as here, federal law governs the imposition of spoliation sanctions. *See Flury v. Daimler*, 427 F.3d 939, 944 (11th Cir. 2005). In this Circuit, sanctions for spoliation may include: "(1) dismissing the case; (2) excluding expert testimony; or (3) instructing the jury that spoliation of evidence raises a presumption against the spoliator." *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing *Flury*, 427 F.3d at 945). A party seeking to establish spoliaton must show: (1) that the missing evidence existed at one time; (2) that the

alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant's prima facie case or defense. *See id.* (citations omitted).

### a.Standard for Imposing Sanctions

A district court's broad discretion to impose sanctions "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944. Sanctions for discovery abuses are therefore "intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* Accordingly, even where the movant establishes the elements of spoliation, a party's failure to preserve evidence "rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on bad faith.'" *Walter*, 2010 WL at *2 (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)); *see also Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1328 (S.D. Fla. 2010) (holding that a finding of bad faith does not simply impact the severity of sanctions, but is a prerequisite to imposing spoliation sanctions in the Eleventh Circuit).

The movant may prove bad faith either through direct evidence, or through circumstantial evidence that shows

> *all* of the following factors: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in this case; (2) the spoliating party engaged in an affirmative act causing evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1300 (S.D. Fla. 2015) (citing *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009)). By way of example, the Court in *Telectron, Inc. v. Overhead Door Corp.* found that the defendant's actions were so "unequivocally motivated by flagrant bad faith" where the defendant "explicitly and

4

urgently called for the destruction of records in a category directly related to the opposing party's claims on the very date that he became aware of those claims." 116 F.R.D. 107, 133-34 (S.D. Fla. 1987).

Notably, though sanctions are inappropriate when a party's actions lead to the destruction of evidence but were not done in bad faith, "this result 'is not intended to preclude [the prejudiced party] from introducing into evidence the facts concerning the failure to preserve relevant [evidence].'" *Wandner*, 79 F. Supp. at 1300 (quoting *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336, 2010 WL 3894142, at *9 (S.D. Fla. Sept. 30, 2010)).  Thus, "an order denying spoliation sanctions would not be the death knell for [Mankiewicz's] efforts to present [HAL's] actions (or inactions) to a jury." *Id.*

    b. **Analysis**

Here, Mankiewicz asks the Court to foreclose HAL from offering evidence on the seven repainted Subject Aircraft, and for attorney fees incurred in preparing the instant motion. Mankiewicz, however, presents no direct or circumstantial evidence demonstrating HAL's bad faith.  In its Motion, Mankiewicz attempts to establish circumstantial evidence of HAL's bad faith by arguing that "the affirmative act causing the loss [of the evidence] cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator, as HAL knew that the stripping . . . and repainting of the Subject Aircraft would eviscerate the physical evidence allegedly causing . . . corrosion."  Def.'s Mot., at 14.  Mankiewicz's argument is circular.  The mere fact that HAL knew that repainting the Subject Aircraft would eliminate certain evidence does not conclusively establish that HAL acted in bad faith.

Contrary to Mankiewicz's argument, the record demonstrates that the repainting can be credibly explained.  Upon discovering the corrosion, HAL did not immediately strip and repaint

the Subject Aircraft. Indeed, HAL first attempted to remedy the corrosion through its normal maintenance routine. Boeing, however, concluded that the maintenance would not arrest the corrosion trend and recommended that HAL repaint the Subject Aircraft. Based on Boeing's conclusions, and in order to ensure safety, HAL took a reasonable course of action.

Mankiewicz contends that safety considerations are a "red herring" because Boeing expressed no time urgency for stripping and repainting. This argument is belied by Mankiewicz's own statement in its reply brief, that "HAL's expert 'interim report' confirms [the] corrosion is cosmetic, affecting surface appearance only, *although if allowed to advance it can, in time, potentially lead to more serious forms of corrosion.*" Def.'s Reply, at 8 (emphasis added). Mankiewicz seemingly admits, then, that there was some urgency for stripping and repainting the Subject Aircraft.

Finally, HAL's actions in stripping and repainting the evidence are a far cry from the "flagrant bad faith" exhibited in *Telectron*. HAL did not urgently call for the destruction of evidence. Rather, HAL repainted seven of the eleven Subject Aircraft over the period of fifteen months. Moreover, HAL told Mankiewicz to repaint the Subject Aircraft immediately after Boeing made its recommendation. HAL invited Mankiewicz to inspect the Subject Aircraft and take samples before HAL filed the action and before the repainting process began. After HAL filed this action in February 2014, it did not recommence the repainting until December 2014. Mankiewicz sets forth no evidence that it requested access to the Subject Aircraft after its June 2013 visit. While these facts do not preclude Mankiewicz from introducing evidence at trial concerning the repaint work, they do rebut Mankiewicz's contentions that HAL acted in bad faith when it repainted the Subject Aircraft. Accordingly, spoliation sanctions are inappropriate.

**B.  HAL's Cross-Motion for Sanctions**

HAL contends that it is entitled to attorney fees and costs association with opposing the instant motion, as well as Mankiewicz's April 2015 Motion for Relief, citing Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Upon consideration of the Motion, and after a review of the record, the Motion is denied.

### III.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Mankiewicz's Motion for Spoliation of Evidence and Sanctions (ECF No. 106) is DENIED.

ORDERED AND ADJUDGED that the HAL's Cross Motion for Sanctions (ECF No. 124) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of November, 2015.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:   All counsel of record