UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:14-cv-20560-KMM

HAWAIIAN AIRLINES, INC.

      Plaintiff,

v.

AAR AIRCRAFT SERVICES, INC., f/k/a
AAR AIRCRAFT SERVICES – MIAMI,
INC., and MANKIEWICZ COATINGS,
LLC,

      Defendants.

_____/

**ORDER GRANTING DEFENDANT MANKIEWICZ COATINGS, LLC'S MOTION
FOR SUMMARY JUDGMENT AND DENYING HAWAIIAN AIRLINES, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

This cause is before the Court on Plaintiff Hawaiian Airlines, Inc.'s ("HAL") and Defendant Mankiewicz Coatings, LLC's ("Mankiewicz") cross-motions for summary judgment. HAL moves for partial summary judgment, [D.E. 171], while Mankiewicz moves for full summary judgment, [D.E. 191]. For the reasons that follow, Mankiewicz's motion for summary judgment is granted.

**I.     BACKGROUND**

This is an action for damages brought by HAL, a commercial airline based in Honolulu, Hawaii, against Mankiewicz, a seller and distributor of commercial paint products, relating to alleged accelerated filiform corrosion sustained on the fuselages of eleven of HAL's Boeing

B717 aircrafts.[1]  HAL's claims are based primarily on allegations that Mankiewicz misrepresented the suitability of its chromate-free ("CF") paint system for use on HAL's 717s, which HAL relied on in using Mankiewicz paint products to repaint those aircrafts. Based on these allegations, HAL asserts various contractual, warranty, misrepresentation, and statutory claims against Mankiewicz.

In 2008, HAL purchased several Airbus A330 aircrafts.[2]  Through this purchase, HAL engineer Christina Tredway, among other HAL representatives, learned from Airbus that Mankiewicz's CF primer and paint was used on the A330s, and that the paint system was Airbus Original Equipment Manufacturer ("OEM") approved.  HAL's engineers were impressed by the fact that the Mankiewicz paint system was lighter, dried quicker, had superior color retention, and was safer for the environment than systems using chromate-based primers.

The following year, HAL decided to repaint its existing fleets of Boeing 717s and 767s. Looking to use a uniform paint system, Tredway and Mankiewicz's Director of Sales and Marketing, Phong Lai, arranged a meeting in Hawaii to discuss extending the use of Mankiewicz's CF paint system on HAL's 717s and 767s.

On August 3, 2009, Mankiewicz's Managing Director, Peter Dietz, and Lai flew to HAL's headquarters in Honolulu to meet with HAL representatives.  At the meeting, Mankiewicz marketed its CF paint system as Airbus OEM approved, but not Boeing OEM approved.

After the presentation, Tredway emailed Mankiewicz a draft of HAL Engineering Specification Document 51002 (the "ESD").  The ESD approved two options for repainting the

---

[1] Upon a review of the record, as well as the parties' submissions, the following facts are undisputed.

[2] Airbus is a major manufacturer of commercial aircrafts headquartered in France.

exteriors of its Boeing 717s and 767s. The first option specified Mankiewicz's CF paint system as the "preferred method of paint." The second option specified a chromate-based paint system, which was Boeing OEM approved and met the DMS 2104 standard for 717s.[3]

Two weeks later, Mankiewicz provided HAL's engineering team with test data showing that its CF primer system complied with Airbus specifications and Aerospace Material Specification 3095 ("AMS 3095").[4] HAL engineer and corporate representative, Dan Smith, reviewed this data—which HAL admits was correct—and confirmed that that Mankiewicz's CF paint system passed all corrosion-related tests.

Several months later, in October 2009, HAL finalized, reviewed, and approved the ESD specifying Mankiewicz's CF paint system as the "preferred method" for repainting HAL's 717s. In reviewing and signing off on the ESD, HAL relied on test data, not sales presentations.

HAL knew Mankiewicz's CF primer system was chromate-free, not Boeing OEM approved, and not included in Boeing's Qualified Parts List ("QPL") of the 717 maintenance manual, which HAL engineers had access to and were familiar with. When deposed, neither Smith nor anyone else from HAL could identify a specific written or oral statement from Mankiewicz in 2009 that its CF paint products were Boeing approved or would meet the DMS 2104 standard.

HAL had an ongoing, decades-long relationship with Boeing and McDonnell-Douglas for Boeing and legacy McDonnell-Douglas aircrafts. HAL had previously called Boeing personnel with questions or concerns regarding the use of certain paint products on its aircrafts. On this

---

[3] The 717 is a McDonnell-Douglas MD-95 legacy aircraft that Boeing rebadged when it merged with McDonnell-Douglas. For that reason, the filiform corrosion testing specifications applicable to the 717 are Douglas Material Specifications ("DMS 2122" or "DMS 2104"), as opposed to Boeing Material Specification 10-72 ("BMS 10-72").

[4] AMS 3095 is a universal specification applicable to some Boeing and Airbus exterior aircraft coatings.

3

occasion, however, HAL did not ask Boeing whether Mankiewicz's CF paint system met Boeing specifications, was Boeing OEM approved, or would meet HAL's particular needs.

About a month after approving the ESD, HAL contracted with AAR Aircraft Services, Inc. ("AAR"), a maintenance, repair, and overhaul company located in Miami, Florida, to refurbish eleven of HAL's 717s. Part of the refurbishment included repainting the 717s using Mankiewicz's CF paint system.[5]

HAL did not contract directly with Mankiewicz to purchase the CF paint products. Instead, AAR purchased the paint products directly from Mankiewicz, which it would then use to repaint the 717s. HAL did not discuss with AAR why HAL chose the Mankiewicz paint system.

As part of its agreement with HAL, AAR submitted a series of purchase orders ("POs") to Mankiewicz to purchase the CF paint products specified by HAL. Mankiewicz responded by tendering corresponding order confirmations ("OCs"), followed by delivery notes and invoices, setting forth the quantities, prices, and terms of the products purchased by AAR. Certain of AAR's POs referenced HAL or specific HAL 717 tail numbers so that AAR would know to bill the invoice to HAL. HAL is not mentioned in Mankiewicz's OCs or delivery notes, nor is HAL mentioned in the "terms and conditions" of the POs. Mankiewicz's Managing Director, Peter Dietz, testified that he intended Mankiewicz to be the primary beneficiary of the agreements.

From 2010 to 2011, AAR stripped, pretreated, and repainted eleven of HAL's 717s on a rolling basis. AAR also inspected and verified that the stripping and repainting conformed to HAL's engineering documents.

In 2012 and 2013, HAL began discovering what it characterizes as accelerated filiform corrosion on the 717s repainted by AAR. After being advised of the corrosion issue, Boeing

---

[5] HAL initially sued AAR and Mankiewicz in this lawsuit, but settled its claim with AAR.

personnel traveled to Hawaii to examine the aircrafts. Boeing conducted a visual inspection of certain 717s and took three paint chip samples for testing from one 717. Boeing's engineers did not perform a causal analysis for the corrosion, but instead tested the paint chips for the presence of chromate only. The test results confirmed that Mankiewicz's paint products do not contain chromate. Based on this finding, Boeing's engineers concluded that HAL's use of a non-OEM approved primer was one of the causes of the filiform corrosion to the 717 fuselages, referring to it as the "root cause."

On June 30, 2014, HAL filed its Amended Complaint alleging claims against Mankiewicz for breach of contract (Count I), breach of third-party beneficiary contract (Count II), breach of implied warranty of merchantability (Count III), breach of implied warranty of fitness for a particular purpose (Count IV), breach of warranty (Count V), breach of the duty of good faith and fair dealing (Count VI), misrepresentation (Count VII), unjust enrichment (Count VIII), violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") (Count IX); and violation of the Magnuson-Moss Warranty Act (Count X).[6]

Each of HAL's claims arise from alleged "misrepresentations" or verbal "warranties" made by Mankiewicz to HAL that its paint products were OEM approved, complied with all applicable specifications, including FAA requirements, and would meet HAL's specific operational needs, including being suitable for the particular environmental conditions in which HAL's 717s routinely operate.[7] The Amended Complaint also alleges that Mankiewicz withheld from HAL the results of a 2008 Boeing BMS 10-72 test.

HAL has moved for partial summary judgment on its contract- and warranty-based claims, and Mankiewicz has cross-moved for summary judgment on all of HAL's claims.

---

[6] HAL has since withdrawn its MMWA claim.

[7] HAL's 717s primarily service inter-island routes in the Hawaiian Islands.

**II.     LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In deciding a motion for summary judgment, the court must view all of the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor. *Id*.

Cross motions for summary judgment do not change the standard. *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337, 1341 (M.D. Fla. 2010) (citing *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church,* 499 F.3d 32, 38 (1st Cir. 2007)). Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.,* 395 F.3d 533, 538–39 (5th Cir. 2004).

**III.    DISCUSSION**

As shown more fully below, Mankiewicz is entitled to summary judgment on all of HAL's claims. HAL's contract- and warranty-based claims fail as a matter of law because no direct contract exists between HAL and Mankiewicz, and because HAL is not a third-party

beneficiary under the contract between AAR and Mankiewicz. HAL's negligent misrepresentation claim fails as a matter of law mainly for lack of justifiable reliance. HAL's unjust enrichment claim fails as a matter of law because HAL, indirectly through AAR, received adequate consideration for the Mankiewicz paint products. And HAL's FDUPTA claim fails as a matter of law because none of the alleged deceptive and unfair acts HAL complains of occurred in Florida.

> A. **Mankiewicz Is Entitled To Summary Judgment On HAL's Breach Of Contract Claim (Count I) Because No Direct Contract Exists Between HAL And Mankiewicz**

HAL's breach of contract claim fails as a matter of law. To prevail on a claim for breach of an oral contract, the plaintiff must show (1) the existence of a contract between the parties, (2) breach of the contract, and (3) damages. *See Assucrazioni Generali SPA v. Agility Logistics Corp.*, No. 08–22825–CIV, 2009 WL 4421262 at *4–5 (S.D. Fla. Nov. 25, 2009) (internal citation omitted). There must be an offer, acceptance, and consideration for a contract to exist. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citations omitted). To create a contract, it is essential that there be reciprocal assent to a certain and definite proposition. *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311, 1316 (S.D. Fla. 2007).

HAL argues that a direct oral contract between it and Mankiewicz exists.[8] Specifically, HAL asserts that "[i]n consideration for HAL agreeing to use the Mankiewicz paint system on its B717 aircraft, Mankiewicz agreed to provide paint products that met applicable requirements and specifications, were OEM approved, and would meet HAL's specific operational needs," as well as "provide personnel to train and supervise the employees applying the paint." HAL maintains that Mankiewicz breached its agreement because the paint system was not qualified to the AMS

---

[8] The Court notes that HAL raised this argument for the first time in its opposition to Mankiewicz's motion for summary judgment.

7

3095 standard when it was sold to HAL; AMS 3095 is not equivalent to Boeing specifications for B717s because AMS 3095 requires only 1,000 hours of filiform corrosion testing, while DMS 2104 (Boeing) requires 2,000 hours; and Mankiewicz's paint system did not protect HAL's aircrafts from corrosion.

But this is not evidence of a contract, as none of the three requirements for a contract are satisfied. First, an offer and acceptance between Mankiewicz and HAL never occurred. Mankiewicz never agreed or contracted to provide anything to HAL. Instead, Mankiewicz made certain representations during a marketing presentation, which do not constitute offers under Florida law. *See, e.g.*, *De La Flor v. Ritz-Carlton Hotel Co.*, 556 F. App'x 938, 939 (11th Cir. 2014) (holding that representations in a hotel's marketing materials to provide a "state of the art" fitness facility did not constitute an offer for hotel guest to accept, and thus hotel did not breach its contract with guest when it failed to have an automated external defibrillator in its fitness facility). HAL's argument incorrectly confuses representations with offers.

HAL's claim also fails for lack of consideration. HAL had no contractual obligation to use Mankiewicz's paint products or even repaint its 717s. HAL's engineers merely approved Mankiewicz's CF paint system in the ESD over the other chromate-based, Boeing OEM approved primer and paint system. As a result, HAL's obligation under the alleged oral contract was illusory: Mankiewicz would have had no recourse against HAL if HAL decided not to repaint the aircraft or to use a different paint system. *See Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331–32 (11th Cir. 2010) ("A contract is illusory under Florida law when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, I will if I want to.") (internal quotations omitted). Similarly, Mankiewicz did not provide any consideration to HAL in the alleged agreement. Neither the

8

providing of a technical service representative by Mankiewicz's at an applicator's facility, upon request and free of charge, nor Mankiewicz's alleged representations to HAL about the quality and performance of its paint products, constitute consideration or an undertaking by Mankiewicz to do anything.

Record evidence further belies the existence of an oral contract between HAL and Mankiewicz. HAL's Senior Director of Engineering, Marc Kup, testified that he was "not aware of any contract that has specifically Hawaiian and Mankiewicz on it." Likewise, HAL's Vice President of Maintenance and Engineering, Lorrin Sardinha, could not identify any agreement between HAL and Mankiewicz. She testified that HAL did not have an oral agreement with Mankiewicz and explained that only HAL's vice presidents or higher could enter into contracts on HAL's behalf. Notably, no HAL vice president or superior officer was at the 2009 presentation in Honolulu, and there is no evidence that Mankiewicz made any representations to HAL officers which, even if considered offers, could have been or were accepted by HAL.

In sum, because no rational trier of fact could find a binding oral contract between HAL and Mankiewicz, Mankiewicz is entitled to summary judgment on Count I of the Amended Complaint.

> **B.     Mankiewicz Is Entitled To Summary Judgment On HAL's Claim for Breach Of Third-Party Beneficiary Contract (Count II) Because HAL Was Not A Third-Party Beneficiary Under The Contract Between AAR And Mankiewicz**

HAL's claim for breach of third-party beneficiary contract also fails as a matter of law. A party is an intended third-party beneficiary only if the parties to a contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party at the time

the contract was created.[9] *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994). "If the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely 'incidental,' and any third party has no legally enforceable right in the subject matter of the contract." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). The contracting parties' intent to benefit the third party must be mutual, specific, and clearly expressed in order to endow a third-party beneficiary with a legally enforceable right. *Id*.

Important to this case, the contracting parties' knowledge that the contract will ultimately benefit an identifiable third party is insufficient to transform the third party into an "intended" third-party beneficiary. *See e.g., Publix Super Markets, Inc. v. Cheesbro Roofing, Inc.*, 502 So. 2d 484, 488 (Fla. 5th DCA 1987), *superseded by statute on other grounds as stated in Bauman v. Rayburn*, 878 So. 2d 1273, 1274 (Fla. 5th DCA 2004) (finding that a property owner was merely an incidental third-party beneficiary of a contract between a general contractor and subcontractor because neither the contract nor anything else in the record clearly expressed an intent to primarily benefit the owner). Indeed, even though a third party is referenced in a purchase order or agreement, the third party is merely an incidental beneficiary absent express evidence that the contracting parties intended to bestow a direct benefit on the third party. *See e.g., Peters v. Keyes Co.*, 2010 WL 1645095, at *3–4 (S.D. Fla. Apr. 21, 2010) (finding that mention of a broker's rights in a purchase contract was insufficient to confer third-party beneficiary status on the broker); *see also Tull Bros., Inc. v. Peerless Prods., Inc.*, 953 F. Supp. 2d 1245, 1259–60 (S.D. Ala. 2013).

---

[9] Whether a non-party to a contract has a right to maintain an action as a third-party beneficiary is a matter of state law. *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1276 (M.D. Fla. 2008). The parties agree that Florida law governs this issue.

10

With that background, HAL's claim for breach of third-party beneficiary contract fails because neither the purchase documents (AAR's POs and Mankiewicz's OCs), nor the dealings between Mankiewicz and AAR, express a clear intent by both parties to primarily and directly benefit HAL.

First, AAR's POs and Mankiewicz's OCs do not express an intent by Mankiewicz or AAR to directly and primarily benefit HAL. If anything, Mankiewicz's OCs demonstrate that Mankiewicz and AAR are the only intended beneficiaries of the purchase documents, as its terms and conditions do not reference HAL in any way. Similarly, AAR's POs do not express a clear and specific intent to bestow a direct or primary benefit on HAL. HAL is not mentioned in AAR's terms and conditions, and HAL is only incidentally referenced in the "PO Notes" section of some of the POs. The occasional references to HAL in the "notes" section of certain POs (without further comment) are not an expression of specific and clear intent to primarily benefit HAL. This conclusion is further compelled by AAR's corporate representative's testimony that the references to HAL were only made so that AAR would know to bill HAL for the paint products purchased. Thus, AAR's POs and Mankiewicz's OCs do not express a specific intent to primarily benefit HAL.

Second, HAL cannot demonstrate that AAR or Mankiewicz (much less both) expressed a clear intention to primarily benefit HAL at the time the POs and OCs were exchanged. The record is devoid of evidence that AAR's intent in submitting the POs was motivated by anything other than its obligation to perform its agreement with HAL, which is distinct from any intent to benefit HAL pursuant to its agreement with Mankiewicz, or that Mankiewicz's intent in selling the paint products to AAR was motivated by anything other than its desire to primarily and

11

directly benefit itself. That both parties knew the paint would ultimately be used on HAL's 717s is insufficient to transform HAL into an intended beneficiary of these purchases.

The Court rejects HAL's assertion that certain acts extraneous to the written POs and OCs, such as HAL's coordination of telephone calls with AAR and Mankiewicz, or instruction provided by Mankiewicz's representatives to AAR on how to properly mix the paint, show that HAL was an intended third-party beneficiary. HAL's argument in this regard is mere speculation and, in any case, insufficient to show a specific intent to benefit HAL necessary to avoid summary judgment. AAR and Mankiewicz engaged in these activities to further their own self-interests—Mankiewicz to profit from selling paint products, and AAR to profit from performing its multi-million dollar agreement with HAL.

In sum, because no rational trier of fact could find that HAL is anything more than an incidental beneficiary under the contract between AAR and Mankiewicz, Mankiewicz is entitled to summary judgment on Count II of the Amended Complaint.

### C. Mankiewicz Is Entitled To Summary Judgment On HAL's Breach Of Warranty Claims (Counts III–V) Because No Privity Of Contract Exists Between HAL And Mankiewicz

Given that HAL has no contractual rights against Mankiewicz, either as a co-party to an oral agreement or as a third-party beneficiary, HAL's claims for breach of the implied warranty of merchantability (Count III), breach of the implied warranty of fitness for a particular purpose (Count IV), and breach of express warranties (Count V) fail as a matter of law. Express- and implied warranty-based claims require privity of contract between the parties. *See Kaiser v. Depuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013); *David v. Am. Suzuki Motor Corp.*, 29 F. Supp. 2d 1309, 1323 (S.D. Fla. 2009); *Weiss v Johansen*, 898 So. 2d 1009, 1012, (Fla. 4th DCA 2005). Because no privity of contract exists between HAL and Mankiewicz,

Mankiewicz is entitled to summary judgment on Counts III, IV, and V of the Amended Complaint.

    **D.    Mankiewicz Is Entitled To Summary Judgment On HAL's Claim For Breach Of The Duty Of Good Faith And Fair Dealing (Count VI) Because HAL Cannot Show That An Express Term Of A Contract Was Breached**

The lack of contractual privity between HAL and Mankiewicz is also fatal to HAL's claim for breach of the implied covenant of good faith and fair dealing. Such a cause of action depends on a showing that an express term of a contract has been breached. *Ins. Concepts and Design v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234–35 (Fla. 4th DCA 2001) (citations omitted). As there is no binding contract involving HAL and Mankiewicz that could be breached, HAL's claim for breach of the implied covenant of good faith and fair dealing cannot stand. Accordingly, Mankiewicz is entitled to summary judgment on Count VI of the Amended Complaint.

    **E.    Mankiewicz Is Entitled To Summary Judgment On HAL's Claim For Negligent Misrepresentation (Count VII)**

HAL's negligent misrepresentation claim likewise fails as a matter of law.[10] To prove a claim for negligent misrepresentation, a plaintiff must demonstrate: (1) misrepresentation of a material fact, (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity, (3) that the representor intended that the misrepresentation induce another to act on it, and (4) that injury

---

[10] HAL does not allege whether its misrepresentation claim is based on intentional or negligent acts. However, because HAL does not plead its claim with the specificity required for intentional misrepresentation under Rule 9(b), *see, e.g.*, *Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV, 2011 WL 2669651, at *3 (S.D. Fla. July 7, 2011), the Court will analyze the claim as one for negligent misrepresentation.

resulted to the party acting in justifiable reliance on the misrepresentation.[11] *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009) (citing *Wallerstein v. Hospital Corp. of America,* 573 So. 2d 9, 10 (Fla. 4th DCA 1990)); *Blair v. Ing*, 21 P.3d 452, 474 (Haw. 2001). Although the question of whether the plaintiff's reliance was justified is typically a question of fact, if reasonable minds could reach but one conclusion, the court may determine it as a matter of law. *See, e.g.*, *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1321 (11th Cir. 2004); *Blair*, 21 P.3d at 474. That is the case where the plaintiff's conduct was manifestly unreasonable in light of the plaintiff's own sophistication, intelligence, and information. *Mitec Partners, LLC v. U.S. Bank Nat. Ass'n*, 605 F.3d 617 (8th Cir. 2010); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1304 (11th Cir. 2003) (holding that any reliance by the plaintiffs on the defendant's misrepresentations was unreasonable and unjustifiable as matter of law because the plaintiffs were "sophisticated players in the industry"); *see also Honolulu Disposal Serv., Inc. v. Am. Ben. Plan Adm'rs, Inc.*, 433 F. Supp. 2d 1181, 1192–94 (D. Haw. 2006) (holding that an employer's reliance on a pension plan's auditor's determination that the employer made required payments to pension plans was not justifiable, and thus the auditor was not liable under a negligent misrepresentation theory for costs incurred by the employer in defending and settling its former employees' claims for pension benefits, where the auditor based its opinions on the employer's records, the employer had access to the

---

[11] The parties disagree on which law should apply to HAL's negligent misrepresentation claim. HAL argues that Florida law should apply, while Mankiewicz argues that Hawaii law should apply. This disagreement is of no moment, as both states have substantially similar negligent misrepresentation law. *Compare Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011), *with Blair v. Ing*, 21 P.3d 452, 474 (Haw. 2001). In any event, under the law of either state, the result is the same—Mankiewicz is entitled to summary judgment on HAL's negligent misrepresentation claim.

collective bargaining agreement, and the employer based its contributions on an oral modification to the collective bargaining agreement).

HAL alleges that Mankiewicz made numerous false representations about the suitability of its paint system. First, HAL alleges that Mankiewicz misrepresented that its paint system met AMS 3095 specifications, and that AMS 3095 was equivalent to Boeing's specifications for the 717s. This argument is unavailing. It is undisputed that Mankiewicz's paint system did in fact meet AMS 3095 specifications (and was officially added to the qualified parts list in 2010) and that Mankiewicz provided this test data to HAL.[12] As such, this statement cannot constitute a misrepresentation. Moreover, whether AMS 3095 testing is equivalent to Boeing specifications for 717s is information that HAL had equal, if not greater, access to than Mankiewicz based on HAL's sophistication, experience as an FAA-regulated airline, and close relationship with Boeing. HAL had previously called Boeing personnel with questions or concerns, including questions regarding the use of paint products on its aircrafts. In the same way, HAL could have asked Boeing whether Mankiewicz's CF paint system was Boeing OEM approved for the 717, or would meet HAL's particular needs, but chose not to do so. Given HAL's sophistication in the aviation industry and ready access to information, HAL's conduct was manifestly unreasonable in this case. Thus, HAL's reliance on Mankiewicz's alleged misrepresentation was not justified as a matter of law.

Second, HAL asserts that Mankiewicz misrepresented that its paint products were "OEM approved" and complied with all applicable specifications, continued its misrepresentation through "further assurances" made after the repainting had begun, and failed to provide HAL

---

[12] That Mankiewicz's paint system was still being tested by an independent laboratory for AMS 3095 approval (despite having already met the qualifications based on internal testing) at the time the representation was made is immaterial because the paint system ultimately passed AMS 3095 testing and, as such, this "misrepresentation" could not have damaged HAL.

15

with the results of a 2008 Boeing corrosion test. Even if Mankiewicz did represent that its products were Boeing approved and complied with all "applicable specifications," HAL's reliance was not justified because HAL knew that Mankiewicz's paint products were not Boeing OEM approved and that the paint products had not been tested to the DMS 2104 standard.[13] Nor was HAL justified in relying on any "further assurances" made in a 2010 email from Jeanne Warren of Mankiewicz to HAL personnel in selecting Mankiewicz's paint products.[14] By that time, HAL had already decided to specify Mankiewicz's paint products for use on its 717s, approved the ESD specifying Mankiewicz's CF paint system as the "preferred method" for repainting the 717s, and AAR had already begun repainting the aircrafts.

Third, HAL maintains that Mankiewicz misrepresented another airline's "good experience" with the Mankiewicz paint system at the 2009 meeting in Honolulu, since the other airline was using a different system from the one Mankiewicz was selling to HAL. HAL also contends that Mankiewicz misrepresented that its paint system would protect HAL's aircraft from corrosion in the harsh Hawaiian environment, and that the paint system would perform as well as a Boeing approved system, even though the paint system failed Boeing filiform corrosion testing in 2008. Even if Mankiewicz said these things, because HAL concedes that it relied on accurate test data provided by Mankiewicz, rather than statements from sales people, in approving the CF primer paint system for use on its aircrafts, HAL cannot show justifiable reliance on these alleged misrepresentations.

---

[13] In fact, HAL engineer and corporate representative Dan Smith testified that Mankiewicz never stated that its CF primer was DMS 2104 approved.

[14] The "further assurances" relates to a 2010 email from Jeanne Warren to HAL, in which Warren, a Mankiewicz sales representative, is responding to a question regarding the life expectancy of the paint coating, not its corrosion resistance.

16

Lastly, HAL claims that Mankiewicz failed to disclose that its CF paint system failed a 2008 Boeing corrosion test. Even if the results from that test had any application in this case, which the parties dispute, the failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information, which HAL does not allege here. *See, e.g.*, *Advisor's Capital Investments, Inc. v. Cumberland Cas. & Sur. Co.*, No. 805CV404T23MAP, 2007 WL 220189, at *3 (M.D. Fla. Jan. 26, 2007) (citations omitted); *see also Behrman v. Allstate Ins. Co.,* 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005).

Accordingly, Mankiewicz is entitled to summary judgment on Count VII of the Amended Complaint.

### F. Mankiewicz Is Entitled To Summary Judgment On HAL's Unjust Enrichment Claim (Count VIII) Because HAL, Indirectly Through AAR, Received What It Bargained For

HAL's unjust enrichment claim also fails as a matter of law. The elements of a claim for unjust enrichment are: (1) a benefit conferred on a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for the defendant to retain it without paying the value thereof. *Jackson-Jester v. Aziz*, 48 So. 3d 88, 90 (Fla. 2d DCA 2010). "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. 5th DCA 2007). Here, AAR (and indirectly, HAL) received what it bargained for—Mankiewicz's CF paint system, which HAL knew was not Boeing OEM approved when it selected the paint system. There is no evidence that the consideration given by Mankiewicz was inadequate for the amount paid by AAR. Indeed, Mankiewicz sold and delivered the paint products to AAR, in full, and there is no claim (or facts to suggest) that the value of the paint products supplied was inconsistent with the

17

price AAR paid to Mankiewicz. Accordingly, Mankiewicz is entitled to summary judgment on Count VIII of the Amended Complaint.

> **G.     Mankiewicz Is Entitled To Summary Judgment On HAL's FDUTPA Claim (Count IX) Because None Of The Alleged Unfair Or Deceptive Acts Occurred In Florida**

Lastly, HAL's claim under the Florida's Deceptive and Unfair Trade Practices Act also fails as a matter of law. The FDUTPA is a consumer protection statute proscribing "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive trade or commerce." Fla. Stat. § 501.204(1); *see also Taft v. The Dade Cty. Bar Ass'n, Inc.*, No. 1:15-CV-22072-KMM, 2015 WL 5771811, at *3 (S.D. Fla. Oct. 2, 2015). The statute protects non-Florida consumers only when the alleged wrongful conduct occurred within the State of Florida. *See e.g.*, *Stein v. Marquis Yachts, LLC*, No. 14–24756–CIV, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015) (citing cases).

Several alleged deceptive and unfair acts form the basis of HAL's FDUTPA claim. All but one, however, undisputedly occurred outside of Florida, and so fail as a matter of the law. The only act that occurred in Florida concerns Mankiewicz's on-site representatives at AAR's facility during the repainting of HAL's aircrafts. Mankiewicz sent representatives to Florida to train and supervise the AAR employees charged with painting the aircrafts. Once in Florida, HAL claims,

> Mankiewicz continued its pattern of deception and consistently withheld key facts from HAL: that the paint system did not meet AMS 3095, that AMS 3095 was not the equivalent to testing to Boeing specifications, and that the paint would system would not protect HAL's aircraft from corrosion or perform as well as a Boeing approved system, because the paint system had failed Boeing filiform corrosion testing in 2008. In addition, after only three aircraft had been painted, Boeing instructed Mankiewicz not to use its paint system on B717s due to corrosion issues. Mankiewicz withheld this information from HAL and permitted the painting of eight additional aircraft in Florida. At no point while their employees were in Florida, did Mankiewicz inform HAL of the falsity of any of its representations. Had Mankiewicz done so, HAL could have stopped painting and

18

>chosen a different paint system. Based on Mankiewicz's acts, HAL authorized and continued to use the Mankiewicz paint system on its aircraft in Florida.

The Court is unable to find any evidence that Mankiewicz's on-site representatives made, or even knew of, the alleged misrepresentations on which HAL purportedly relied. To the contrary, after lengthy deposition examination, HAL's own corporate representative was unable to identify any fraud, deception, or misrepresentation that occurred in Florida. Because HAL's own record testimony forecloses a FDUTPA claim, Mankiewicz is entitled to summary judgment on Count IX of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, it is ordered and adjudged that Mankiewicz's Motion for Summary Judgment [D.E. 191] is granted and HAL's Motion for Partial Summary Judgment [D.E. 171] is denied.

The Clerk of Court is instructed to close this case. All pending motions are denied as moot.

Done and ordered in Chambers at Miami, Florida, this 7th day of March, 2016.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: Counsel of record